We will call the next case, Lynn v. Atty Gen USA. Mr. Wong. May it please the Court, my name is Andy Wong. I represent the petitioner, Mr. Huang Dong Lin. I have reserved three minutes for rebuttal. That request will be granted. Thank you, Judge. The petitioner respectfully asserts that he has met the burden in proving asylum eligibility. I'd like to first address the Mr. Wong, try, maybe pull that microphone or get a little closer to it. I'd like to first address the appropriate standard of review in this case. The Board of Immigration Appeals made a legal determination concerning Mr. Lin's eligibility for relief. This is a legal determination and not a factual finding. Therefore, the Court should review this case on a de novo basis. In other words, the Court is not bound by the administrative decision below and it does not need to give the BIA any deference with respect to its decision. Then I'd like to address the proper standard of proof. Mr. Lin applied for asylum protection based on his well-founded fear of persecution on account of his religion. This was asserted to be a well-founded fear of future persecution, but the BIA and the IJ had both been operating on the conclusion that there was no past persecution, right? There's no past persecution. So there had to be a subjectively and an objectively rational basis or appropriate basis for concluding that there's a fear that would warrant asylum, right? Yes. Okay. Now, if you would address please, Mr. Wong, whether there's a difference between credibility and persuasiveness. Under the regulatory scheme of the REAL ID Act, as I understand it, you can succeed on testimony alone in establishing a fear of future persecution if it's credible and persuasive. And there's a third item, but is it the fact that those things are listed separately seems to indicate that they're two separate concepts, right? That's correct, Judge. Okay. So if they're two separate concepts, is it possible for an applicant for asylum to be both credible and not persuasive? It is possible, Judge. I acknowledge that there are three different elements to sustaining the burden of proof, credibility, persuasiveness, and specific facts. I respectfully maintain that the BIA and the IJ conflated the concept of convincing and credibility. The BIA seems to have applied the term convincing and equated to credibility. But can it be read, can the opinion of the BIA be properly read as saying, well, we sent this back for a credibility determination and we didn't get one. So we're going to accept that Mr. Lin is credible. And yet, his testimony on its own was not persuasive. Is that a possible reading of the BIA's ruling? It's a possible reading. Actually, the BIA did get a credibility finding. The IJ made an alternative finding of credibility. The IJ found that Mr. Lin was credible for purposes of the decision and for appeal. I thought the IJ had said, look, I'm not going to make a credibility finding. But in the absence of one, the Real ID Act presumption of credibility will kick in. The judge actually made an alternative finding of credibility. And as I mentioned in the brief, the persuasiveness issue, that element, should not overlap with the credibility issue. It should rather concern the likelihood of persecution. And it is stated in Cotamo Flores v. INS, it's a Second Circuit decision, 805F2-60. And in that case, the Second Circuit basically said we reject the contention of the government that the showing must be so persuasive as to demonstrate that persecution is more likely than not. It doesn't have to be more likely than not, but I don't understand the government to be saying that. I mean, I think what you're referring to as the alternative finding is the IJ saying, if I were to have to do something, I guess I'd find this Mr. Lin credible. And if we accept that as the finding, that there's credibility there, hit the point about why the IJ was wrong to say, yeah, but I would have expected corroborating evidence on these certain points, and they're not there. And so, in effect, I'm not persuaded. Yeah, actually, the cooperation shouldn't be required when it conflicts with a credibility finding. For purposes of the administrative appeal and for the petition for review before this court, Mr. Lin is presumed to be credible. Well, he's presumed to be credible, but under the three-part dual-eye inquiry of our court, he could be credible but not persuasive. In other words, one of the main things here is the big question, why the pastor never testified or why reasons weren't given sufficient to indicate why he didn't testify. And he was not that far removed from the site of where testimony was to be given. And other indications of other parishioners and so forth to test the fervent belief of this man. He might truly be a Christian and so forth, but the extent of his belief was questioned by the BIA and the IJ. Actually, an asylum applicant doesn't need to establish fervent belief in a religion to satisfy the burden of proof. And Mr. Lin actually gave a reasonable explanation as to why the pastor was unavailable to appear for the hearing. He has a very big congregation to take care of, and he was just not available. To verify that Mr. Lin actually attends the church, he and a member of the church. Does he have to accept that? Is it compelled that he must assume that to be true? Credibility is established for this case, and Mr. Lin credibly testified that he's a Christian, and that should be enough. So is your position really that once you say a person's credible, that everything they say, A, has to be fully accepted at face value, and B, that it can be all by itself sufficient? A credible statement means that the statement is true. Having additional corroborating evidence does not make it more true. But it may not be sufficient. True, the credibility is one of the three elements. Mr. Lin has personal experience of nearly being arrested, and he has shown that the police in China is still looking for him and is interested. Okay, let's turn now to, before you get to the persuasive argument, if the IJ and the BIA were correct on corroboration, that there was a need for corroboration and it wasn't provided, Mr. Lin cannot win, can he? If the BIA is correct, then. Okay. Under Abdullahi, why wasn't a proper note of, you argue, I take it, that Abdullahi has not been satisfied. Why wasn't the IJ's first decision of 2006 sufficient notice to provide your client with notice that he had to corroborate his claim? First of all, the IJ rendered the decision. When IJ rendered the decision, he did not intend to give Mr. Lin notice. Why is that? Because he was just rendering a decision. Okay. He did not expect that decision. But as it turned out, the BIA sent the case back to the IJ for a credibility determination. Yes. But wasn't the statement in the 2006 decision sufficient to put your client on notice that he had to provide some corroboration? Actually, that decision is not sufficient notice because the factual issue concerning the first decision is different from the second. In the first decision, the IJ expressed doubt with respect to Mr. Lin's credibility. But for the second decision, Mr. Lin offered more testimony that's consistent, and he also offered more proof, documentary proof. And for the second decision, the IJ made an alternative finding that Mr. Lin was credible. So the corroboration requirement concerns the credibility. And because credibility for the second decision is already established, that is zero. I'm sorry. Go ahead. What's contained in the first decision is not sufficient notice for the Abdulai decision. Yeah, you keep circling back on something. I want to make sure I understand it. You keep saying the credibility finding as to Mr. Lin. Let me actually just ask, are you suggesting that once Mr. Lin was said to be credible, he didn't have to come forward with any corroborating evidence, regardless of what the IJ may have said or not said in the first decision? He actually submitted corroborating evidence. He submitted on a second hearing. Well, stick with my idea. Maybe I should make it hypothetical. Assume he submitted nothing else. Certainly the IJ didn't think he submitted enough and said, I gave you a blueprint the first time around and you didn't come through with it. But set that aside. Let's talk about Applicant X, who's deemed credible and testifies, is your position that having been deemed credible, that corroboration is unnecessary because whatever they said, ipso facto, is sufficient to establish the right to the relief they seek? No, Judge. True, the IJ has authority to require corroboration, but the scope and nature of the corroboration should not conflict with the credibility finding. Maybe you could explain what the conflict is then, if the presiding judge would allow you to see your red lights on, but I'm curious to know what it is that the IJ said you didn't come forward with, which would have been in conflict with the idea that there was at least a base level of credibility. Well, the IJ raised four points in his decision. One is that he said that Mr. Lin, oh, sorry, Judge, may I finish? Go ahead, you may. He found that the only corroboration that the IJ requested was that the pastor should come to court to testify that Mr. Lin is a Christian. That's the only corroboration that the IJ requested, or required for the second decision. Mr. Lin already testified that he's a Christian. It's not in dispute. So for this case at least, the corroboration for the pastor to appear in court is not necessary to sustain the burden. Okay, Mr. Wong, we'll have you back on rebuttal. Mr. Bernstein. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. The linchpin of the immigration judge's decision is that the petitioner failed to provide corroboration that was required. Why don't you go to Mr. Wong's first point then. He says the only corroboration bore on whether or not he was a Christian. He said he was a Christian. The IJ said he was credible. So anything that you're asking for beyond that is necessarily in conflict with the credibility finding you've already made. If I may, Your Honor, and trust me, if you want me to answer this question right now, I will, but I was going to talk about the exhaustion issue. If the Court doesn't have any questions about the exhaustion issue,  You can always get back to exhaustion. Thank you, Your Honor. Yes, the statute, as the petitioner concedes, makes clear that corroborative evidence may be required to reinforce otherwise credible testimony. Well, what's the logical – how can it logically be the case that somebody comes in and says, I'm a Christian, and the IJ says, I believe you, and then says, now prove it? Well, if the IJ says, I believe you, which didn't happen in this case. Well, what does it mean to say, I find you credible? If the central point of his testimony is, I'm a Christian, so I'm worried I'm going to get persecuted, and the IJ says, I find you credible. If I have to make a finding, I say you're credible. I think credibility means different things depending upon the situation and the context. Generally, credibility means that you are presumed to have given sincere and accurate – that you believe the testimony you give is accurate. I mean, the primary example of this is an individual who engages in speculation. You have an asylum applicant who testifies to facts, and he also speculates. The immigration judge finds him generally credible. Okay, well, he's not speculating about whether he's a Christian or not, right? We're not – at this point, this isn't like I'm speculating whether I might get beat up when I return to China. This is him saying something as to which there's no speculation required. I'm a baptized member of a church, right? That's his assertion. IJ says, you're credible, and then says, prove it. Is there an inherent conflict in that? Well, that didn't happen in this case. Perhaps there's an inherent conflict in the hypothetical that you raised, but that didn't happen in this case. The immigration judge certainly wanted, in the first decision, certainly indicated that he wasn't sure whether or not the individual was Christian and required corroboration on that fact. So the conflict that Your Honor is identifying – Let's go to the second decision, which is the one that's before us. That's – well, I think both decisions are before you because the immigration judge incorporated the first decision into the second decision. Yeah, but he was specifically told, when the case was remanded, to make a credibility determination. He said, I don't want to make one, but if I have to, I find him credible. Isn't that what he said? Yes, he essentially said that if the board finds him – So if the question is Christianity, and he says, I find these credible, what's missing? Well, the question becomes, if he is presumed to be Christian, based upon the positive credibility determination, the question is simply not whether or not being a Christian means that one has a well-founded fear of persecution. Mr. Lin was, in essence, asserting that if he was forced to return to China, he would either have to give up going to church because he didn't think – he thought that the registered churches were communist and godless – that if he was forced to go to China, he would have to risk persecution by worshiping at an unauthorized church. Yeah, but let me stop you there. That may all well be true. And that's the crux of his well-founded fear, I guess. But look, the question, the fault that the IJ and the BIA found was that he failed to corroborate through the pastor's testimony or an affidavit his Christianity, not the threat to him in China. That's not true, Your Honor. It's not? There was no part of the immigration judge's decision, second decision, that concluded that he was not credibly asserting he was Christian. The immigration judge, first of all, he incorporated many of the – well, incorporated all of the reasons why corroboration was required from the first decision. And specifically in the second decision, he found – excuse me. He found that the testimony with respect to his reluctance to attend an unauthorized church in China was lacking in detail and support and foundation, and as well that he did not testify with emotion or passion. Well, could he rely on that demeanor and lack of detail after he had already found the man credible that he was a Christian and wanted to pray at a church of his choosing? Yes, because the statute provides for that. The statute provides that even with credible testimony, a fact finder can require corroboration. Well, you're – with all due respect, Mr. Bernstein, I'm having a tough time following your argument. You say that the BIA and the IJ weren't requiring corroboration as to his Christianity, but I thought in fact they were. That at the second go-round, they were still saying things like there's no authentication of your baptismal certificate or something like that. I mean, what does that have to do – Well, that was a subsidiary issue. if it's not a demand for corroboration of something as to which he, having been found credible, has already stated the fact? Well, first of all, the BIA did not require him to corroborate anything. They concluded that because he failed – and this is the crux of the exhaustion argument – because he failed to attack or contest or put into contest the immigration judge's requirement that he corroborate, that he in a sense, in essence, waived his opportunity to do so. And the BIA clearly concluded that because he hadn't come forward with any argument, that it would – Didn't he argue there was a finding of credibility before the BIA? He did, but that doesn't – Doesn't that necessarily say I don't have to corroborate? I don't need corroboration. I was found to be believable. Absolutely not, because the statute says even if you're credible, corroboration can be required. The statute says. You're saying the corroboration argument was waived? It was waived before the board, and if it was waived before the board, then it was not exhausted, and this court doesn't have jurisdiction to review his new complaint. But the board raised the corroboration issue sua sponte. They did not, Your Honor. All the board did in discussing the corroboration argument was set out the context of the immigration judge's decision. At the end of that paragraph, they said the petitioner hasn't articulated any meaningful argument contesting the immigration judge's corroboration requirement. But Mr. O'Rourke argued before the BIA that he was credible and there's no need for any further corroboration. He was found to be credible in his claim that he was a Christian. But that does not put into contest the immigration judge's application of the statute, which provides that otherwise credible testimony may be subject to a corroboration requirement. Doesn't context matter here, Mr. Bernstein? I mean, certainly the statute provides for it, but it seems that it provides for it in the circumstances you were talking about earlier where a person could be perfectly credible in what they say, but their knowledge or their information is insufficient to establish something. That's exactly what happened here. How can you say that? The fact that was being demanded for corroboration was not something that was outside his specific personal knowledge. I mean, if you say, I believe you when you tell me that, how can you with any degree of logic say, and now I also want you to prove it to me? How can you demand corroboration of something you have accepted? Respectfully, Your Honor, I disagree with you in toto because as I've said before and as we say in our brief, what was required to be the immigration judge concluded that corroboration was necessary. One aspect of the corroboration requirement was that corroboration was necessary because his assertion that he could not worship at an authorized church because the churches didn't believe in God and were godless was not based upon his personal experience. He testified in the second hearing that when he was in China, he didn't know the difference between an authorized church and an unauthorized church. So there's another piece. There's another piece here that even if we thought there was something odd about the I'm a Christian piece, there are other pieces as to which corroboration could rightfully have been required, and that's sufficient to uphold the decision. Is that, in essence, the argument you're making? Well, the second part certainly is the argument I'm making because I don't think, again, and, you know, we'll both, well, at this point you'll look at the record and you'll determine whether or not. Well, didn't he prove that corroboration, he gave a baptismal certificate which the IJ, no one ever found was not authentic. He proved that he was actually baptized. Well, the immigration judge expressed some unease with the certificate. But he never found that it was not authentic. He didn't find that it was authentic. Well, then by default it's evidence before the court. It is evidence before the court, but essentially what the immigration judge was saying is provide a foundation for this evidence, and the board agreed that he was perfectly within his purview to do so. But even if the certificate proved that he was baptized and that he was a Christian, again, by the time the second decision rolled around, the immigration judge didn't seem to be all that concerned with whether or not he was Christian. The immigration judge was again concerned with the petitioner's assertion, implicit assertion, that he could not attend an unauthorized church because his religious beliefs would not be fully realized if he did so. Was the BIA engaged in its own fact-finding here, Mr. Bernstein? No, absolutely not. When they make comments about the demeanor and draw conclusions from the demeanor— Your Honor, if I may, and I apologize for interrupting, but all they did was describe the immigration judge's observations and assert that the immigration judge is in the best position to ascertain demeanor. But those were statements—I guess this is my question. What does his demeanor have to do with anything, as Mr. Wong put it in his briefing, if the question of his credibility is resolved, that by talking about demeanor you resurrect credibility and that that's just not permissible since the IJ has already said he's credible? Well, just because the IJ was not basing an adverse credibility determination upon his demeanor. He was simply expressing the reason why he thought corroboration was necessary. And it was necessary in part because the petitioner was testifying about a matter which should have been generally fraught with emotion. Which particular matter should have been fraught with emotion? His assertion that if—implicit assertion that if forced to go to China, he could not practice his religion because either he would be— because he could not practice in an authorized church because it conflicted with his religious beliefs because they didn't believe in God, or he would be forced to—excuse me, he would be forced to subject himself to persecution by practicing— by worshiping in an unauthorized church. I apologize for interrupting. So his assertion about his fervor and his capacity to worship as he wanted. Well, his capacity to worship as he wanted, and the immigration judge observed that he would have expected not a passionless explication, but an explication with some passion. Let me ask you about Abdullah. Yes. The immigration judge failed to meet the second step of the Abdullah analysis. You know, he did present some corroboration. He presented the letter from his church, the letter from his uncle and his father, and the baptismal certificate. He didn't present sufficient corroboration. I mean, the immigration judge had problems with the— and justifiable problems with the affidavits because they really didn't explain anything. You mean the letters? The letters, yes, because they didn't explain anything. They certainly didn't indicate that his issue with the police were because he was a Christian. Neither of the letters indicated that he was a Christian. The letters really, as the immigration judge found and the board seemed to agree, didn't establish anything. The immigration judge and the board certainly complied with Abdullah. Did he give enough notice? Where was the notice? The notice was in the first—number one, the notice was in the first hearing where pretty much everything— Mr. Wong said the issue was different. The issue was not different. The issue was the exact same issue. What was the issue? The issue was whether or not he established a well-founded fear of persecution based upon his religion. That was the issue. The issue did not change. And the immigration judge in his first decision, although it's a little confusing, it clearly indicated that he should provide corroboration with respect to all the matters that were implicated in the second hearing. And furthermore, under Abdullah, the immigration judge doesn't necessarily have to apprise the petitioner. The Abdullah court noted the board's decision in SMJ and asserted and summarized that there are just certain things that you expect—that a petitioner should expect to have corroborated. And certainly in a case where the petitioner— where the petitioner's main reason that he had alleged a well-founded fear was that he could not practice his religion or would be persecuted if he practiced in an unauthorized church, it certainly would be reasonable to expect that since he didn't know anything about the difference between an unauthorized church and an authorized church when he was in China, it certainly would be reasonable to expect that he would be expected to provide more than just his assertion, his passionless assertion that— That he didn't want to worship someplace else. That he either didn't want to worship in a government church or would worship in an unauthorized church or unregistered church and expose himself to persecution. All right, Mr. Bernstein, thank you very much. Thank you very much, Your Honor. Mr. Wong. Mr. Wong. With respect to the demeanor issue, I'd just like to clarify that the IJ's finding refers only to his knowledge about the state-sanctioned church. According to Mr. Lin's testimony, he had only been attending church for about four months before the incident took place. He does not claim that he has a lot of knowledge about, you know, the difference between underground church and a state-sanctioned church. And in any event, the IJ's question only asked Mr. Lin about the knowledge of the nature of the church and not about something that a person normally feels strongly about, such as his past persecution or torture or his personal religious feeling about Christianity. About the exhaustion issue, I really do not understand why my adversary thinks that Mr. Lin has not exhausted the issue. The whole issue about this case is whether or not Mr. Lin has met the burden of proof. He has raised this issue before the board, and he raised it again. He raised the exact same issue. Well, Mr. Wong, Mr. Bernstein has spoken for himself. I don't want to put words in his mouth. But if we understand his argument to be, look, even if you judges don't want to talk about or accept what the government is saying about the Christian corroboration stuff, there's this other issue, and that issue is the concerns, fear and concern regarding where to worship as a Christian when you return to China, that it was reasonable for the IJ and then turned to the IA to say, look, what's the foundation for that expressed concern? You should have some knowledge. You should be able to provide some corroboration for your assertion that if you go back, you're going to be persecuted. Why is that wrong? What's wrong with that reasoning? Well, Mr. Lin did submit many background information that shows that China actually has executed under-crowned church members. Some churches in Fujian province also has been demolished. And so Mr. Lin did provide sufficient corroboration to support his work. At a certain point, are we off of de novo review and starting to talk about the capacity of the IJ as a fact finder and the BIA as an appellate body to weigh evidence and make a judgment about what's enough? Well, the judge, as I mentioned, should conduct a de novo review. I think that in this case there's certainly a confusion about – I think the legal standard concerning the element of persuasiveness is not very clearly defined in this circuit at least. I think that in this case the court should remand the case to the BIA to allow it to clearly articulate the legal standard for this element. I see that my time is up. Thank you. Thank you, Mr. Wong. And we thank both counsel for their arguments and we'll take the matter under advisement.